### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                         Case No. 3:19-cr-44-J-34PDB

SEAN PATRICK FARRELLY
_____/

# O R D E R

   **THIS CAUSE** is before the Court on Defendant Sean Patrick Farrelly's Motion to Withdraw Plea of Guilty (Doc. 62; Motion). On March 21, 2019, a federal grand jury in the Middle District of Florida returned a one count Indictment charging Sean Patrick Farrelly with sex trafficking of a minor in violation of 18 U.S.C. § 1591(a)(1), (b)(2), and (c). See generally Indictment (Doc. 1). After initially pleading not guilty, on June 19, 2019, Mr. Farrelly, accompanied by his court-appointed attorney, Maurice Grant,[1] appeared before the Honorable Patricia D. Barksdale, United States Magistrate Judge, and entered a plea of guilty. See Clerk's Minutes (Doc. 45; June 19 Hearing); see also Digitally Recorded Change of Plea (Doc. 58; June 19 Hearing Tr.). The Court accepted Mr. Farrelly's plea and adjudicated him guilty on July 8, 2019. See Acceptance of Plea of Guilty, Adjudication of Guilt, and Notice of Sentencing (Doc. 50; Acceptance of Plea). Four months later, on November 14, 2019, Mr. Farrelly filed the instant Motion seeking to withdraw his guilty plea. See generally Motion.

---

[1] Mr. Grant represented Mr. Farrelly until August 28, 2019, when the Court granted his Motion to Withdraw as Counsel (Doc. 52; Motion to Withdraw as Counsel). See Order Granting Defense Counsel's Motion to Withdraw and Appointing New Counsel (Doc. 53).

The ability of a defendant to withdraw a previously entered plea of guilty is governed by Rule 11(d), Federal Rules of Criminal Procedure (Rule(s)), which provides:

> a defendant may withdraw a plea of guilty or nolo contendere:
> (1)    before the court accepts the plea, for any reason or no reason, or
> (2)    after the court accepts the plea, but before it imposes sentence if:
>        (A)    the court rejects a plea agreement under Rule 11(c)(5); or
>        (B)    the defendant can show a fair and just reason for requesting the withdrawal.

Rule 11(d).  As is evident from the plain language of the Rule, the timing of a defendant's request to withdraw a guilty plea is quite significant.  If the request is made before the court accepts the plea, the defendant has the absolute right to withdraw the plea for "any reason or no reason."  Rule 11(d)(1); United States v. Villalona, 506 F. App'x 902, 904 (11th Cir. 2013) (recognizing that "[a] defendant has an absolute right to withdraw a guilty plea before the district court accepts it") (citing Rule 11(d)(1)).[2]  If, on the other hand, a defendant seeks to withdraw his plea after its acceptance by the court, the defendant must show a "fair and just reason" for doing so, see Rule 11(d)(2), and the decision of whether to allow the "withdrawal is left to the district court's sound discretion," see United States v. Midkiff, 806 F. App'x 678, 680 (11th Cir. 2020) (per curiam).  Here, because Mr. Farrelly filed the Motion seeking to withdraw his plea well after the Court's acceptance of it, he must satisfy the heavy burden imposed by Rule 11(d)(2).

In his Motion, Mr. Farrelly contends that the totality of the circumstances surrounding the entry of his guilty plea show a fair and just reason to permit him to withdraw the plea at this time.  See Motion at 8.  In support, Mr. Farrelly argues that he should be permitted to

---

[2] "Although an unpublished opinion is not binding . . ., it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

withdraw his plea because the "plea was not entered into freely and voluntarily, but rather was entered into as a result of the many threats and coercive type conduct engaged in by agents of the Government . . . ." Id. at 4, 7. He further asserts that he was "not fully aware of nor advised" of the "commercial sex act" element of the charged offense or that potential enhancements under the sentencing guidelines could result in an advisory sentencing guideline range of 360 months to life in prison. Id. at 4-5, 8. Without specifying when he first decided to withdraw his guilty plea, Mr. Farrelly states

> Farrelly has wanted to withdraw his guilty plea for some time, but was not sure about how to proceed and did not in his mind receive much support from his then attorney. He was never specifically advised or otherwise aware of the following:
> (a) that he could object to the findings set forth in the Magistrate's Report and thereby withdraw his previously entered guilty plea, or
> (b) that pursuant to Rule 11(d)(1), Federal Rules of Criminal Procedure, he could withdraw his plea of guilty at any time before the Court accepts the plea, **for any reason or no reason.**
> If he had been so advised or was aware of the above he would have proceeded with a withdrawal of his guilty plea within those specified time periods.

Id. at 4 (emphasis in original). Mr. Farrelly complains that he has been prejudiced because instead of being able to withdraw his plea for any reason or no reason as permitted by Rule 11(d)(1), "he is now relegated to filing under Rule 11(d)(2)(B), which requires him to show 'a fair and just reason.'" Id. at 7.

The United States filed a memorandum opposing Mr. Farrelly's request, see United States' Response in Opposition to Defendant's Motion to Withdraw Guilty Plea (Doc. 66; Response), and the Court held a hearing on the Motion on January 8, 2020, see Clerk's Minutes (Doc. 70; January 8 Hearing); see also Transcript of Motion Hearing (Doc. 72; January 8 Hearing Tr.). At the January 8 Hearing, the Court heard argument and after placing Mr. Farrelly under oath heard his testimony in support of the Motion. See id. At

the conclusion of the hearing, the Court rejected Mr. Farrelly's contention that his guilty plea was not entered freely and voluntarily.  See January 8 Hearing Tr. at 65-71.  In doing so, the Court found that each of the arguments presented by Mr. Farrelly in support of that contention were affirmatively refuted by the record.  See id.  Nevertheless, the Court did not deny the Motion in its entirety.  Rather, the Court determined that additional evidence was necessary to determine when Mr. Farrelly first sought to withdraw his plea and to resolve Mr. Farrelly's claim that his counsel's failure to properly advise him of the ability to withdraw his plea constitutes a fair and just reason warranting the exercise of the Court's discretion to permit its withdrawal.  See id. at 71.  To address this issue, the Court scheduled a second hearing for January 27, 2020, to receive testimony from Mr. Grant.  See id. at 72-75; see also Clerk's Minutes (Doc. 74; January 27 Hearing).

During the January 27 Hearing, Mr. Grant testified about the events leading up to Mr. Farrelly's entry of the plea on June 19, 2019, his contact with Mr. Farrelly following the entry of the plea, and his discussions with Mr. Farrelly regarding the withdrawal of his plea.  See generally Transcript of Motion Hearing (Doc. 77; January 27 Hearing Tr.).  Notably, Mr. Grant testified that the first indication from Mr. Farrelly that he wished to withdraw his plea came in an August 16, 2020 voicemail.  See id. at 6, 16.  However, in discussing the hearing in which Mr. Farrelly entered his guilty plea, Mr. Grant candidly stated

> During the middle of [the June 19 Hearing], [Mr. Farrelly] leaned over to me and asked whether he could withdraw his plea.  And I told him the answer was no, because if he didn't want to plead guilty, we didn't have to plead guilty right now
>
> . . .
>
> The best way to explain it, we're in the middle of the plea colloquy.  The judge is asking him questions about whether or not he's willing to enter a plea.  Mr. Farrelly leaned over to me, I covered the mike, and he asked me: Can I withdraw my plea later on?

-4-

> And I told him, no, because we're there to enter a plea of guilty.  I mean, if you're pleading guilty, you're pleading guilty because you are guilty.  If you don't want to plead guilty, we're not going to plead guilty.

Id. at 19:13–20:10.  After hearing Mr. Grant's testimony, the Court advised

> So based on Mr. Grant's initial testimony that Mr. Farrelly did not move to - - did not notify him of the desire to withdraw his guilty plea until August 16th at the earliest, it seemed to me that the motion to withdraw the guilty plea was due to be denied.
> Mr. Grant's latter testimony, however, is a little bit more concerning, and I think I should give the parties an opportunity to brief this issue.
> And here's my concern.  Mr. Farrelly specifically alleges in paragraph 11 of his motion that he was not told that he could withdraw his plea under Rule 11 for no reason or any reason at all.  And initially that was not a concern to me, because if Mr. Farrelly had not asked to withdraw his guilty plea, there would have been no reason for his attorney to advise of that.
> But Mr. Grant's testimony that during the plea hearing, Mr. Farrelly advised or asked whether if he went forward he would be able to withdraw his plea, and Mr. Grant said no, that's problematic.

Id. at 28-29.  Indeed, the Court noted the possibility that if Mr. Grant's statement at the June 19 Hearing caused Mr. Farrelly's delay in seeking to withdraw his plea, that might possibly constitute a fair and just reason warranting consideration of his request to do so.

See id. at 29-31.  To address this remaining issue, the Court ordered supplemental briefing which the parties submitted,[3] held a third hearing on December 2, 2020,[4] and finding that the parties supplemental briefs and argument failed to adequately address important

---

[3] See Supplemental Memorandum (in support of Defendant's Motion to Withdraw Plea of Guilty) (Doc. 79; Supplemental Memo) and United States' Supplemental Response in Opposition to Defendant's Motion to Withdraw Guilty Plea (Doc. 80).

[4] After submission of the supplemental briefs in March of 2020, the COVID-19 pandemic seized hold in Florida.  As a result, in-person proceedings in the federal courthouse came to a standstill for a lengthy period of time.  The Court eventually set another hearing to address Mr. Farrelly's Motion for November 12, 2020. See Notice of Hearing (Doc. 81).  However, shortly before the hearing, the facility in which Mr. Farrelly was detained experienced an outbreak of COVID-19 resulting in the cessation of all prisoner transports until the outbreak had been addressed.  For these reasons, the Court was not able to hold another hearing on the matter until December 2, 2020.  See Clerk's Minutes (Doc. 84).

factors, ordered a final round of briefing.[5]  <u>See</u> Clerk's Minutes (Doc.  84; December 2 Hearing).

In this Order, the Court addresses the sole remaining basis for Mr. Farrelly's request to withdraw his guilty plea:

> Mr. Farrelly's claim that he was "ill advised or misinformed as to his rights to withdraw his plea" and that the misadvice – Mr. Grant's statement at the plea hearing that he could not later withdraw his plea – "constituted a violation of his fundamental rights, and presents a fair and just reason for him to now withdraw his guilty plea."

<u>See</u> Supplemental Memo at 3.[6]  Upon consideration of the record as a whole, the Court determines that the Motion is due to be denied.  Mr. Farrelly's request to withdraw his plea is governed by Rule 11(d)(2) and he has failed to present a fair and just reason warranting a decision by the Court to allow him to do so.

Although the issue before the Court at this time is a narrow one, Mr. Farrelly initially made a number of claims purporting to support the contention that he did not freely and voluntarily enter his plea.  The Court rejected those claims at the January 8 Hearing after Mr. Farrelly testified.  Because an understanding of those claims and the reasons for the Court's rejection of them plays a role in the Court's resolution of the remaining issue, the Court discusses them here.

---

[5] <u>See</u> United States' Second Supplemental Response in Opposition to Defendant's Motion to Withdraw Guilty Plea (Doc. 85; Second Supplemental Response) and Second Supplemental Memorandum (in support of Defendant's Motion to Withdraw Plea of Guilty) (Doc. 86; Second Supplemental Memo).

[6] In his original Motion, Mr. Farrelly simply stated that he had not been advised of his right to withdraw his plea before the Court's acceptance.  <u>See</u> Motion ¶11.  Only after hearing Mr. Grant testify about his recollection of his discussion with Mr. Farrelly during the plea colloquy did Mr. Farrelly's contention shift to relying on Mr. Grant's alleged misadvice.  <u>See</u> Supplemental Memo at 2, 3.  Indeed, it is in the Supplemental Memo where Mr. Farrelly highlights portions of Mr. Grant's advice, and maintains that the reason he did not withdraw his guilty plea during the period of time when he could do so for any or no reason is directly attributable to Mr. Grant's advice.  <u>See id.</u>  Additionally, Mr. Farrelly asserts in the Supplemental Memo that Mr. Grant's advice constitutes ineffective assistance of counsel under <u>Strickland v. Washington</u>, 496 U.S. 668 (1984).  <u>See</u> Supplemental Memo ¶¶ 6, 8.

I.      **Background and Testimony of Mr. Farrelly and Mr. Grant**

On June 13, 2019, Mr. Farrelly appeared before Judge Barksdale for a plea proceeding with the stated intent of entering a plea of guilty.  See Clerk's Minutes (Doc. 42; June 13 Hearing); see also Digitally Recorded Change of Plea Hearing (Doc. 60; June 13 Hearing Tr.) at 2:25–3:2. At the June 13 Hearing, Judge Barksdale discussed the nature of the proceeding with Mr. Farrelly and began conducting a thorough Rule 11 plea colloquy. See generally June 13 Hearing Tr.  During the colloquy, Judge Barksdale emphasized the importance of the proceeding and encouraged Mr. Farrelly to speak up if he had any hesitation about his decision to plead guilty.   See id. at 5:17–20.   As the colloquy progressed, but prior to its completion, Judge Barksdale sensed hesitation on Mr. Farrelly's part and inquired of him accordingly.  See id. at 20:14–17.  Specifically, Judge Barksdale noted Mr. Farrelly's demeanor and after the following exchange with him decided to conclude the proceeding:

> THE COURT: All right. We have talked about your right, the rights you give up by pleading guilty, the charge against you, the penalties, the consequences, sentencing process. Do you have any questions about any of those topics or anything else before I ask you how you plead?
>
> MR. GRANT: A moment, Your Honor.
>
> THE COURT: Sure.
>
> MR. GRANT: We're ready.
>
> THE COURT: Okay. Mr. Farrelly, did Mr. Grant answer your question?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: All right. Do you have any additional questions that I can answer for you? So, Mr. Farrelly, just from your facial expression, it looks like you might be a little bit hesitant. It's really an important decision that you're making here. If you have any hesitancy, it's really not advisable to move

forward. It's really your decision whether you're to plead guilty or not guilty, not anybody else's decision, so you need to feel really comfortable with that.

THE DEFENDANT: I don't feel comfortable.

THE COURT: You do not feel comfortable. And that's fine, I'm glad you spoke up. So this is it. I mean, if you plead guilty, you really have limited opportunities to withdraw the plea. So that being said, why don't we not go further, recess, and give you time to consult more with Mr. Grant and really think about what you're doing here. And, again, entirely up to you whether to plead. . . Okay. So I'll just recess and not do anything more until I hear back from the parties.

Id. at 20:12–21:16.

At his request, Mr. Farrelly appeared before Judge Barksdale for a second change of plea hearing on June 19, 2019, again intending to plead guilty. See June 19 Hearing Clerk's Minutes; see also June 19 Hearing Tr. Mindful of Mr. Farrelly's previous hesitation, Judge Barksdale began the Rule 11 colloquy anew, re-emphasizing the importance of Mr. Farrelly's total comfort with the proceeding. See id. at 3:1–15. In doing so, she specifically asked Mr. Farrelly if he had adequate time since the previous hearing to have his questions answered and to feel comfortable with his decision to change his plea. See id. Mr. Farrelly confirmed that he had, that all his questions had been answered, and that he was comfortable and ready to proceed with the entry of a guilty plea. See id. at 3:5–15. Judge Barksdale then reminded Mr. Farrelly that if at any point he felt uncomfortable with the proceedings, or if he had any new questions, the proceedings would be halted. See id. at 3:16–19. He expressed his understanding. See id. at 3:19.

The ensuing colloquy was quite thorough and covered all the matters required by Rule 11. See generally id. Notably, when Judge Barksdale asked Mr. Farrelly whether anyone had forced, threatened, or coerced Mr. Farrelly, or promised him anything, Mr. Farrelly stated:

-8-

THE DEFENDANT: No, ma'am.  I do -- I do -- would like to say something.

THE COURT: Okay.

THE DEFENDANT: I have not -- I'm going to go ahead and continue this, but I just want to say that indirectly, my family has been threatened, my daughter has been threatened. She's beyond -- and Vicki Cole, by Mr. Gamarra and Agent Perkins. They've had her deliberately fired. Somebody called from a 904 number, and it's a ghost number. They've had her -- threatened her boss if they didn't fire her, that she was going to lose. . .I was issued questions by them. And they -- she deliberately got fired. Because they think that she's involved and she's not involved. They've taken a case of DCF that was way before this case was involved. They threatened my daughter. They've held her child from her, deliberately. They've went out to my ex-wife's house, threated her with the grandchild we have together. They've pulled over my daughter and threatened her. And all that stuff has gone on. My daughter was going to be here today, but she couldn't be, to verify all this. I think Detective Gamarra has went above and beyond and used his authority to -- to the wrong. And I just want to make that statement today.

. . .

I understand that I'm going to plead guilty, but all this stuff was used deliberately and for the wrong.

THE COURT: And there are other avenues to address that. This would not be one --

THE DEFENDANT: No, I know.

THE COURT: -- Since my authority is limited.

THE DEFENDANT: I just wanted it on the record.

THE COURT: And that's fine. You can say what you want on the record. I do want to ask you though, is any of that -- set that aside? Is any of that causing you to plead guilty?

THE DEFENDANT: No.

THE COURT: No. And are you confident of that?

THE DEFENDANT: Yes.

THE COURT: Because it really needs to be a separate matter, whatever is going on in the background. You're pleading guilty because you are guilty, and if that's not the case then we can't go forward with it.

THE DEFENDANT: No, I'm fine with it.

THE COURT: Okay. All right. Let me ask you one more time. Did anyone force, threaten, coerce, intimidate you or promise you anything to get you to give up the right to have the district judge hear your plea directly?

THE DEFENDANT: No.

Id. at 8:20–11:10.  Wanting a clear record, Judge Barksdale again asked Mr. Farrelly whether anyone had forced, threatened, coerced, or intimidated him, or promised him anything, to influence his guilty plea.  See id. at 11:14–12:1.  Mr. Farrelly responded "No" to each inquiry.  See id.

Proceeding with the Rule 11 colloquy, Judge Barksdale confirmed that Mr. Farrelly understood that he would waive significant rights by pleading guilty and that he understood the consequences of pleading guilty.  In his colloquy with Judge Barksdale, Mr. Farrelly confirmed that he had discussed the case in its entirety with Mr. Grant and stated that Mr. Grant had answered all his questions.  See id. at 16:6–16:19.  Mr. Farrelly testified that he understood the charge in the Indictment and the necessary elements of the charge, including the second element requiring proof that the minor "would be caused to engage in a commercial sex act."  Id. at 16:20–17:23.  Indeed, after Judge Barksdale read the elements aloud, Mr. Farrelly confirmed that he understood the elements and did not have any questions about them.  See id. at 17:25–18:2.  Judge Barksdale also discussed the potential penalties, advising Mr. Farrelly that by pleading guilty, he faced a "mandatory minimum term of imprisonment of ten years and up to life imprisonment," and Mr. Farrelly stated that he understood the potential penalties and had no questions.  See id. at 18:3–

20:13.   Turning to the sentencing process, Judge Barksdale specifically advised Mr. Farrelly that

> The sentence imposed by the district judge might be different from any estimated sentence that Mr. Grant or anyone else has given you.  In fact, it could end up being higher than you expect.  If that were to happen you would still be bound by your plea and would not have the right to withdraw it.

Id. at 2:3–13.  Once again, Mr. Farrelly stated that he understood and had no questions.  See id. at 22:14–21.

   As part of the plea colloquy, the United States read a lengthy proffer detailing the factual basis of the charge against Mr. Farrelly, and Mr. Farrelly testified as to the truth and accuracy of that factual proffer.[7]   See id. at 23:1–31:20.  Before concluding that there was a factual basis for Mr. Farrelly's guilty plea, Judge Barksdale addressed each element of the charged offense with him.

> THE COURT: Starting with No. 1, do you admit that between in or about March 2018, through in or about February 2019, in the Middle District of Florida, you  knowingly recruited, enticed, transported, obtained, maintained, patronized, and solicited by any means, S.C., the person named in the indictment?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And, second, do you admit that you did so having had a reasonable opportunity to observe S.C. or knowingly or in reckless regard of the fact that S.C. had not attained the age of 18 years, and knowingly or in reckless disregard that S.C. would be caused to engage in a commercial sex act?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: All right.  And, third and finally, do you admit that your acts were in or affected interstate commerce, and that you enticed S.C. by, 1, using a cellular telephone, a facility of interstate commerce, to arrange commercial sex acts with S.C.; 2, purchasing a vibrator for S.C. that was

---

[7] The Court notes that during the June 19 Hearing, the parties made a nominal modification to the factual proffer of a date of a recorded conversation, expanding it from "February 18" to "on or about approximately February 18."  See June 19 Hearing Tr. at 29:21–30:18.

shipped in interstate commerce; and, 3, using Trojan condoms during sexual intercourse that were manufactured in Virginia and were shipped in interstate commerce?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right.  I find a factual basis for your plea.

Id. at 30:24–31:22 (emphasis added).   In response to Judge Barksdale's final questions about his plea, Mr. Farrelly testified that he was entering his plea freely and voluntarily, that he was in fact guilty of the charged offense, and that the alleged threats he had referenced earlier had no effect on his decision to plead guilty.  See id. at 32:3–20.  He also acknowledged that he could not know the precise sentence he would receive, see id. at 32:21–24, and that no one had promised he would receive a light sentence or otherwise be rewarded for pleading guilty, id. at 32–33:2.

With regard to Mr. Grant's representation, Judge Barksdale and Mr. Farrelly had the following exchange:

THE COURT: Mr. Farrelly, you're represented by Mr. Grant. Have you discussed your case fully and explained everything you know about the case to him?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you had enough time to talk to him or anyone else you want to talk to about your case?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you satisfied with Mr. Grant in the way he's represented you in this case?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you have any complaints about the way he's represented you in the case?

THE DEFENDANT: No, ma'am.

THE COURT: Do you have any complaints about the way you've been treated by the Court or by anyone else that's causing you to plead guilty?

THE DEFENDANT: No, ma'am.

THE COURT: Has anyone suggested you answer untruthfully today?

THE DEFENDANT: No, ma'am.

THE COURT: Have you told the truth today?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right.  Do you fully understand all the rights and procedures you waive and give up by pleading guilty?

THE DEFENDANT: Yes, ma'am.

Id. at 33:9–34:10.  After making findings in support of the acceptance of Mr. Farrelly's plea, Judge Barksdale acknowledged the 14 day time period in which Mr. Farrelly could object to her recommendation that the Court accept the guilty plea and advised that the objection period would remain open.  See id. at 35:22–36:2.

On the same day as the plea hearing, Judge Barksdale issued a Report and Recommendation Concerning Guilty Plea (Doc. 48; Report and Recommendation), in which she found that Mr. Farrelly's plea was intelligently, knowingly, and voluntarily made, and that the facts he admitted establish the elements of the charged offense.  See Report and Recommendation.  On that basis, she recommended that the Court accept Mr. Farrelly's plea and adjudicate him guilty of count one of the Indictment.  Id.  Neither Mr. Farrelly nor the United States filed objections to the Report and Recommendation, and

eighteen days later, on July 8, 2019, the Court adopted the Report and Recommendation and adjudicated Mr. Farrelly guilty of the charged offense.  See Acceptance of Plea.[8]

On August 15, 2019, the United States Probation Office filed a Rule 32(e)(2) initial presentence investigation report in which it calculated a proposed advisory sentencing guideline range applicable to Mr. Farrelly consisting of a term of imprisonment of 360 months to life.  See Presentence Investigation Report (Doc. 51; PSR).  Less than two weeks later, on August 26, 2019, Mr. Grant filed the Motion to Withdraw as Counsel, citing total irreconcilable conflict between Mr. Farrelly and himself.  See Motion to Withdraw as Counsel at 2.  Judge Barksdale granted the Motion to Withdraw as Counsel on August 28, 2019, and appointed Mr. Ronald Maxwell to represent Mr. Farrelly for the remainder of the proceedings.  See Order Granting Defense Counsel's Motion to Withdraw and Appointing New Counsel (Doc. 53).

Three months after the disclosure of the PSR, on November 14, 2019, Mr. Farrelly filed the instant Motion, seeking to withdraw his guilty plea under Rule 11(d)(2)(B).  See generally Motion.  In the Motion, Mr. Farrelly set forth several rationales purporting to support his request to do so.  See id.  In his attempt to establish a fair and just reason to withdraw his plea, both in the Motion and in his testimony at the January 8 Hearing, Mr. Farrelly contended that his guilty plea was not free and voluntary.  See id.  Indeed, despite having assured Judge Barksdale under oath that he wanted to plead guilty, that no one coerced or pressured him, that he was pleading guilty freely and voluntarily, and that he was in fact guilty, Mr. Farrelly claimed innocence.  See id.  According to Mr. Farrelly his

---

[8] The Report and Recommendation, which Mr. Farrelly does not deny receiving, contained written notice of the right to object to its acceptance.  See Report and Recommendation Concerning Guilty Plea (Doc. 48); see also January 8 Hearing Tr. at 55:21-22.

plea was the product of threats and coercion, a failure to receive adequate assistance from Mr. Grant, and a lack of understanding of the elements of the offense and the potential penalties.  See id. at 4-6.

In an attempt to explain his change of position, at the January 8 Hearing, Mr. Farrelly insisted that he "took the charge" because of the threats and harassment by the government and because he had been dissatisfied with his representation by Mr. Grant. See, e.g., January 8 Hearing Tr. at 16:11–12, 23:10–25, 25:1–2, 28:16–19, 31:25–32:1, 43:20–44:7, 57:9–20.  When asked why he didn't express his dissatisfaction with Mr. Grant to Judge Barksdale at the June 19 Hearing, Mr. Farrelly explained "I just had it in the frame of mind. . .I had psyched myself up and in the frame of mind that I was just going to get it over with as quick as possible and take the charge. . ." Id. at 51:2–6; see also 62:19–21. Mr. Farrelly testified that he pled guilty because his "frame of mind" was to proceed with the plea. See, e.g., id. at 16:10–14.  He insisted that he only pled guilty because that was "what [he] had to do to protect [his] family," id. at 16:1–2, and he "regret[ted his] decision on June 19th," id. at 19:2–4.  When confronted with the statements he made under oath in the plea colloquy, Mr. Farrelly maintained that he "didn't lie," and "was only trying to protect his family," id. at 19:9–10, such that his desire to protect his family was "[t]he only thing that was on [his] mind the whole time, the process, every question," id. at 21:3–7.  In his own words, Mr. Farrelly explained:

> When I walked in -- when I walked in the courtroom on June 19th, I was in the frame of mind that I just wanted to get it over with because I didn't want to do what I was doing.  I was going to take the charge that I did not do, and I was in the frame of mind that I just wanted to get it over with because I was in a frame of mind of -- to protect my family in the harassment and the threats. . .I answered those question in the -- in the -- in the frame of mind to take the charge that I wasn't -- that I'm innocent of to protect my family.

Id. at 48:5–20.  The Court, troubled by this explanation, inquired further:

So because you were in a frame of mind to take the charges, it was ok, in your mind, to falsely answer that you understood the charges; to falsely answer that everything in your factual basis is true; to falsely answer that you were satisfied with Mr. Grant's representation; to falsely answer that he had answered all of your questions; to falsely answer that the threats against your family had nothing to do with your decision.  It was ok to say all of those things falsely, because you just wanted to take the charge, right?

Id. at 48:21–49:5.  Mr. Farrelly replied "I -- you put it kind of harshly, but I don't -- you know, I regret what I did.  I really honestly do regret what I did.  I wish I wouldn't have been in that frame of mind."  Id. at 49:6–9.  Then, in the following exchange, the Court expressed grave concerns regarding Mr. Farrelly's truthfulness at the January 8 Hearing:

THE COURT:  Well, Mr. Farrelly, here's the problem with all that.  You're here today because you want to withdraw your guilty plea; right?

THE [DEFENDANT]:  Yes, ma'am.

THE COURT:  Your frame of mind today is that you want to withdraw your guilty plea?

THE [DEFENDANT]:  Yes, ma'am.

THE COURT:  So why wouldn't I think that you will falsely say whatever you think you need to say in court today to withdraw your guilty plea because you're in a frame of mind to do that?  Because you're telling me that's what you're willing to do.  If you're in a frame of mind to do something in particular, you'll lie or say whatever you have to say in order to accomplish it.  Why wouldn't I think that that's exactly what you're doing here today?

THE [DEFENDANT]:  That's -- that's not the case.  I was in a frame of mind to take the charge to protect my family.  After -- after several days of regret and much -- much regret, and several days after that, I felt that I made the wrong decision.  I -- it -- the effects of the threatening and the harassment weighed and didn't give me the clarity in my head that I should have had.  I felt that I was all alone, by myself, because I didn't get the help from Mr. Grant that I should have got or got the help from anybody.  I wish I could go back and take my choice away, and I apologize for that.  And I'm not -- I'm not lying or -- or falsely answering questions today.

Id. at 49:10–50:16.

Having heard Mr. Farrelly's testimony and considered the arguments set forth in his Motion, the Court explained to Mr. Farrelly the readily apparent contradictions between his testimony before Judge Barksdale under oath at the two change-of-plea hearings in June, and his testimony before the Court on January 8. See id. at 65:20–66:1, 66:8–69:9. Specifically, the Court addressed each of Mr. Farrelly's arguments for withdrawing his plea, with the exception of his cursory statement in the Motion that had he known of his ability to withdraw his plea under Rule 11(d)(1) before the Court accepted his plea, he would have done so, and rejected them. See id. at 66:8–69:9. In rejecting Mr. Farrelly's various claims that his guilty plea was not freely and voluntarily entered, the Court stated:

> The answers that you gave to Judge Barksdale under oath, some of them on two separate occasions, because they -- they were covered both on June 13th and on June 19th, and the others of them only on June 19th, those answers affirmatively contradict the claim … that [your] guilty plea[] was not free and voluntary, because [you] only pled guilty because of the threats and the harassment.
>
> They affirmatively contradict and refute the claim that you did not understand the commercial sex act element or any other element of the offense.
>
> They affirmatively refute any suggestion that [you] did not understand the penalties that [you were] facing.

Id. at 69:10–22. The Court noted that, while representations of a defendant at a plea hearing are not insurmountable, they do constitute a formidable barrier in any subsequent proceeding. See id. at 69:23–70:5 (citing Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)). The Court also recognized that solemn declarations in open court carry a strong presumption of verity, and that there likewise exists a strong presumption that a defendant's statements during a plea colloquy are true. See id. at 70:6–9 (citing United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994); and United States v. Gonzalez-Mercado, 808 F.2d 796, 799-800 (11th Cir. 1987)). Having carefully considered, Mr.

Farrelly's unequivocal testimony at the June 13 and 19 Hearings, as well as his belated and wholly inadequate and illogical explanations for providing those answers under oath then and now contending the answers were not truthful, the Court readily concluded that he was not credible and found that Mr. Farrelly had not carried his heavy burden to demonstrate that his testimony at the plea hearings was false.  See id. at 69:10–70:17.  In doing so, the Court explained to Mr. Farrelly:

> The only explanation you've given to me is you say that you were in a frame of mind to just take the charges, to plead guilty to this ten-years-to-life offense because you thought that was the only way to stop the harassment and because you couldn't get help from your lawyer.

> And respectfully, sir, you were standing in front of Judge Barksdale on two occasions, who could have addressed either of those things.  And instead -- what you're wanting me to accept today is that instead of telling her: No, I'm just pleading guilty because I want this to end, because I want to protect my family, that you lied to her and said the exact opposite.

> That -- that just defies credulity, and I find that not credible.

> It's not to say that someone cannot ever establish that the representations they made at a plea hearing were untruthful and -- or perhaps give an explanation why, but having heard your explanation, it makes -- I fail to find any credible support for the suggestion that at the time you entered your guilty plea, you were doing so unknowingly or involuntarily for the reasons stated.

> And so to the extent that the motion is based on those matters, I find it to be refuted by the record and that it presents no grounds for relief.

Id. at 70:18–71:19.  Having found Mr. Farrelly's testimony to be "not credible," the Court denied Mr. Farrelly's Motion to the extent he based his request for withdrawal on claims that his guilty plea was not knowing and voluntary.  See id.; see also Clerk's Minutes (Doc. 70).  However, the Court took the remaining issue - when and how Mr. Farrelly communicated his desire to withdraw his plea to Mr. Grant; whether Mr. Grant misadvised

Mr. Farrelly; and whether those circumstances could constitute a fair and just reason for withdrawal of his guilty plea - under advisement.  See January 8 Hearing Tr. at 71:20–24.

As to the question of when he first sought to withdraw his plea, the testimony Mr. Farrelly gave at the January 8 Hearing was at times vague and at other times contradictory. See generally id.  For example, he contended that the August 15th release of the PSR had nothing to do with his desire to withdraw his plea and that he "wanted to pull [his] guilty plea way before [the PSR] even came out."  See id. at 22:1–2.  Yet, he also testified that the release of the PSR played a role, even if it "was only a fraction of [his] decision to pull [his] plea." Id. at 22:10–19.  Notably, in his Motion, Mr. Farrelly stated that he expected a sentencing range close to 100 and 125 months and complained that he never thought he would be facing an advisory sentencing range of "30 years to life (as is the case with the PSI received by the Defendant)."  Motion at 5.  Additionally, at times Mr. Farrelly suggested that he decided to withdraw his plea after he received access to the law library which occurred in August.  See January 8 Hearing Tr. at 21:22–22:17.  Yet, at other times, he seemed to suggest he made the decision within days of entering the plea, see id. at 54:20–24, 55:16–20, or that his desire to withdraw his plea prompted or coincided with his requests to obtain access to the law library, see id. at 45:77–46:22.  When the Court asked additional questions attempting to get clarification on the timing of Mr. Farrelly's decision, he stated:

> I'm not sure of the date, Your Honor. I know it was. . .I know we spoke one day on the phone.  We had several -- we talked about several things and we just couldn't come to an agreement, and that's when we parted ways.

Id. at 39:7–40:10–18.  When asked directly when he first advised Mr. Grant that he wished to withdraw his plea, Mr. Farrelly stated:

> It was several days after June -- July 19th that I did.  I started reading -- . . . I'm sorry, July 19th, or when I pleaded -- when I pled guilty, shortly after that. I started asking him.  I started leaving messages.  It was -- . . . I left messages saying that I wanted to pull my guilty plea.  And when I finally got ahold of him on the phone, he told me that was not an option.

Id. at 46:12–22.[9]  When the Court asked whether Mr. Farrelly knew the date he was able to reach Mr. Grant by phone, he replied "I'm not exactly sure."  See id. at 46:23–24.

At the January 27 Hearing, the Court heard testimony from Mr. Farrelly's former attorney, Mr. Grant.  See Clerk's Minutes (Doc. 70; January 27 Hearing).  Unlike Mr. Farrelly's vague and contradictory testimony, Mr. Grant's testimony was succinct and direct.  Mr. Grant testified that he received voicemail messages from Mr. Farrelly on July 15 and August 1 of 2019, in which Mr. Farrelly expressed a desire for access to the law library.  See January 27 Hearing Tr. at 13:12–15.  Mr. Farrelly did not mention any interest in withdrawing his plea in either of those messages.  See id. at 13:8–14:6; 16:11–14.  Mr. Grant further testified that he first became aware of communications from Mr. Farrelly expressing his desire to withdraw his guilty plea on August 19, 2019, via two voicemail messages: the first left on August 16 and the second left on August 19.  See id. at 6:6–14, 16:11-14, 17:7-12.  Mr. Grant explained that he met with Mr. Farrelly the day after hearing the messages to discuss Mr. Farrelly's desire to withdraw his guilty plea.  Id. at 6:18. According to Mr. Grant, at his in-person meeting with Mr. Farrelly on August 20, 2019, Mr. Farrelly again expressed his desire to withdraw his plea.  Id. at 6:19–22.  Mr. Grant summarized their discussion as follows:

> I advised him that I did not think that [withdrawal] would be in his best interests.  And we discussed the issues that he was concerned about that

---

[9] Mr. Farrelly repeated the vague reference to June - - July 19 on at least one other occasion during the hearing.  See id. at 45:11–14.

were -- that were causing him to want to withdraw his plea.  And when we left there, my impression was he was still having that under consideration.

But my position, and I had told him, was that if there was going to be a motion to withdraw his plea, that our office would not be able to do that based upon my understanding of his reason, and so that's where we ended it on August 20th.

Id. at 7:9–19.

With regard to the reasons Mr. Farrelly gave for wanting to withdraw his plea, Mr. Grant testified that Mr. Farrelly did not mention coercion or threats as a basis for wanting to withdraw his guilty plea, nor did he suggest he did not understand the maximum penalty, or the case against him, or that he did not know about his ability to object to the Report and Recommendation or withdraw his plea.  Id. at 9:15–19; 10:3–7; 11:6–10; 12:13–23. However, Mr. Farrelly did discuss his advisory guidelines as calculated in the PSR as a reason for wanting to withdraw his plea.  See id. at 15:9–19; 17:21–18:8.

Notably, Mr. Grant volunteered that Mr. Farrelly had inquired about the ability to withdraw a plea during the second change-of-plea hearing on June 19, 2019.  See id. at 19:7–10.  Specifically, Mr. Grant explained that to his recollection:

During the middle of [the June 19 Hearing], [Mr. Farrelly] leaned over to me and asked whether he could withdraw his plea.  And I told him the answer was no, because if he didn't want to plead guilty, we didn't have to plead guilty right now

. . .

The best way to explain it, we're in the middle of the plea colloquy. The judge is asking him questions about whether or not he's willing to enter a plea.  Mr. Farrelly leaned over to me, I covered the mike, and he asked me: Can I withdraw my plea later on?

And I told him, no, because we're there to enter a plea of guilty.  I mean, if you're pleading guilty, you're pleading guilty because you are guilty. If you don't want to plead guilty, we're not going to plead guilty.

-21-

Id. at 19:13–20:10.  Following this exchange, Mr. Farrelly proceeded with the plea colloquy and entered the guilty plea which he now seeks to withdraw.  See June 19 Hearing Tr. at 22:22–25.

## II.    Standard of Review

Pursuant to Rule 11(d)(2)(B), after a district court accepts a defendant's guilty plea, and before sentencing, a defendant may withdraw his guilty plea if he shows a fair and just reason for requesting the withdrawal.  See United States v. Brehm, 442 F.3d 1291, 1298 (11th Cir. 2006) (per curiam) (quoting Rule 11(d)(2)(B)).  While Rule 11(d)(2)(B) is to be liberally construed, a defendant does not have an absolute right to withdraw a guilty plea before sentencing.  United States v. Buckles, 843 F.2d 469, 471 (11th Cir. 1988); United States v. McCarty, 99 F.3d 383, 385 (11th Cir. 1996) (per curiam) (citing id. at 471).[10] Rather, "[t]he decision to allow withdrawal is left to the district court's sound discretion." See United States v. Midkiff, 806 F. App'x 678, 680 (11th Cir. 2020) (per curiam) (noting that the district court's decision whether to allow withdrawal of a guilty plea "will be reversed only if its decision is arbitrary or unreasonable," and observing that "[w]e will not find the district court abused its discretion if it conducted an extensive plea colloquy that conforms with Rule 11. . .prior to accepting a guilty plea") (quoting Buckles, 843 F.2d at 471, and citing Brehm, 442 F.3d at 1298).  Additionally, "[t]he good faith, credibility, and weight of a

---

[10] In Buckles and McCarty, the Eleventh Circuit interpreted the rule regarding presentence withdrawal of a guilty plea which at the time of the court's application was found in Rule 32(d) and 32(e) respectively.  That rule is now found at Rule 11(d).  See Rule 11(d) (pre-sentence withdrawal of guilty plea) and 11(e) (post-sentence withdrawal of guilty plea).  See also 2002 Advisory Committee Notes to Rule 11; U.S. v. Herring, 216 F. App'x 927, n.1 (11th Cir. 2007) (noting that prior to the 1994 Criminal Rule amendments, Rule 32(e) was found at Rule 32(d)).  Despite the renumbering, "the Buckles factors and context are still the framework for analyzing a withdrawal motion."  See United States v. Edwards, No. 8:17-CR-451-T-36SPF, 2020 WL 6363896, at *3 (M.D. Fla. Oct. 29, 2020) (citing Brehm, 442 F.3d at 1298) (applying the Buckles factors to the application of Rule 11(d)(2)(B)).

defendant's assertions in support [of a motion to withdraw a guilty plea] are issues for the trial court to decide." See Brehm, 442 F.3d at 1298 (quoting Buckles, 843 F.2d at 472).

A defendant seeking to withdraw a guilty plea that has been accepted by the court has the burden of showing a fair and just reason for the withdrawal. See, e.g., Buckles, 843 F.2d at 471. In determining whether a defendant has met his burden, a court considers the totality of the circumstances surrounding entry of the guilty plea, including "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." Brehm, 442 F.3d at 1298 (quoting Buckles, 843 F.2d at 472). If the first two factors weigh against the defendant, a court need not "give particular attention" to the final two factors. See Gonzalez-Mercado, 808 F.2d at 801; see also United States v. Kirksey, 283 F. App'x 714, 715 (11th Cir. 2008) (per curiam) (citing Gonzalez-Mercado, 808 F.2d at 801).

Additionally, when considering whether a guilty plea was knowing and voluntary, a court must determine that the core concerns of Rule 11 have been met. See United States v. Freixas, 332 F.3d 1314, 1318 (11th Cir. 2003). Specifically, "'(1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea.'" Id. (quoting United States v. Lejarde–Rada, 319 F.3d 1288, 1289 (11th Cir. 2003) (per curiam) (additional citation omitted)). Notably, "[s]tatements made under oath by a defendant during a plea colloquy receive a strong presumption of truthfulness. . .[c]onsequently, a defendant bears a heavy burden to show that his statements under oath were false." See United States v. Bandzul, 652 F. App'x 860, 861 (11th Cir. 2016) (citing United States v.

-23-

Medlock, 12 F.3d 185, 187 (11th Cir. 1994), and United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988)).  Additionally, "'the timing of [a defendant's] motion to withdraw also deserves. . .consideration.'"  Id. at 861 (citing Gonzalez-Mercado, 808 F.2d at 801) (alteration in original).  Thus, "'the longer the delay between the entry of the plea and the motion to withdraw it, the more substantial the reasons must be as to why the defendant seeks withdrawal.'"  Brehm, 442 F.3d at 1298 (quoting Buckles, 843 F.2d at 473).

## III.    Findings of Fact and Conclusions of Law

In his Motion, Mr. Farrelly initially contended that he wanted to withdraw his plea for some time, he "did not receive much support" from Mr. Grant, and Mr. Grant never specifically advised Mr. Farrelly that he could object to Judge Barksdale's Report and Recommendation or that he could withdraw his plea for any reason before its acceptance by the Court.  See Motion at ¶ 11.  However, after hearing Mr. Grant's testimony at the January 27 Hearing, Mr. Farrelly refined his argument to assert, for the first time, that Mr. Grant's negative response to his inquiry about the ability to withdraw a guilty plea at the June 19 Hearing constituted misadvice and that misadvice is the reason that he did not seek to withdraw his plea within the time permitted by Rule 11(d)(1).  According to Mr. Farrelly, Mr. Grant's "misadvice" constitutes ineffective assistance of counsel under Strickland v. Washington, 496 U.S. 668 (1984) and constitutes a fair and just reason to permit him to withdraw his guilty plea.  See Supplemental Memo ¶¶ 6, 8.

Critical to Mr. Farrelly's contention that he should be permitted to withdraw his guilty plea at this time are his contentions (1) that he wanted to withdraw his guilty plea before the Court accepted it, and (2) that but for Mr. Grant's alleged misadvice, he would have done so.  The record before the Court supports neither claim.

As to the timing of Mr. Farrelly's decision to seek to withdraw his guilty plea, the Court finds no support in the record for a conclusion that Mr. Farrelly formed or expressed a desire to withdraw his plea before its acceptance by the Court on July 8, 2019.  Notably, in his Motion, Mr. Farrelly does not say when he decided he wanted to withdraw his guilty plea, instead, he states only that he wished to do so for "some time."  Motion at ¶ 11. During the January 8 Hearing, Mr. Farrelly was incapable of identifying the time frame in which he made his decision, much less identifying it in a consistent manner.  His testimony was vague, contradictory, and inconsistent with other evidence.  Similarly, Mr. Farrelly was unable to provide any credible explanation for why he would have pled guilty on June 19 and then sought to withdraw his guilty plea less than three weeks later before its acceptance on July 8.  While Mr. Farrelly gave a number of reasons during the January 8 Hearing in an attempt to persuade the Court that he did not freely and voluntarily enter his guilty plea, and that he immediately regretted doing so and wished to withdraw it, the Court found his testimony to be incredible.  Specifically, the Court found Mr. Farrelly's claims that his plea was not freely and voluntarily entered, that he did not understand the commercial sex act element of the offense or the potential penalties, and that he did not have adequate legal representation, affirmatively contradicted his prior sworn testimony.  His testimony as a whole simply was not credible at all.

Mr. Grant, on the other hand, testified clearly, unequivocally, and consistently regarding the timeline of Mr. Farrelly's decision, and the Court credits his testimony.  Mr. Grant testified that the first communication from Mr. Farrelly expressing any desire to withdraw his guilty plea came in a voicemail message left on August 16, 2019.  Mr. Grant also testified that prior to that call, on July 15 and August 1, 2019, he received voicemail

messages from Mr. Farrelly requesting that Mr. Grant help Mr. Farrelly obtain access to the law library.  In neither of those messages did Mr. Farrelly mention a desire to withdraw his guilty plea.  Notably, Mr. Farrelly also testified that he contacted Mr. Grant to obtain access to the law library and consistent with Mr. Grant's testimony, Mr. Farrelly did not suggest that in either of those communications he advised Mr. Grant of a desire to withdraw his guilty plea.  Both of the communications regarding law library access came after the Court's July 8 acceptance of Mr. Farrelly's guilty plea.

Although Mr. Farrelly's testimony overall was not credible, the Court finds one portion of his testimony regarding the reasons for his decision to withdraw his guilty plea to be both credible and significant - his acknowledgment that the release of the PSR showing him to be subject to an advisory guideline imprisonment range significantly in excess of what he expected played a part in his decision.  See January 8 Hearing Tr. 22:18–19.  This testimony is consistent both with the timing of Mr. Farrelly's voicemail message to Mr. Grant expressing the desire to withdraw his guilty plea – the day after the release of the August 15 PSR.  It is also consistent with Mr. Grant's testimony that in discussing his desire to withdraw his guilty plea, Mr. Farrelly never stated that it was a result of coercion, or a lack of understanding of the penalties or the case against him, but did discuss the advisory guidelines.  See January 27 Hearing Tr. at 15:9–19; 17:21–18:8.

The Court finds Mr. Farrelly's testimony in this regard credible because it is consistent with Mr. Grant's testimony that the guidelines played a role in motivating Mr. Farrelly's change of heart and it is also consistent with the objective timing of his August 16 communication to Mr. Grant.  The Court finds this testimony significant because the August 15 disclosure of the PSR came some five weeks after the Court had accepted the

plea. Thus, if the disclosure of the PSR prompted Mr. Farrelly's desire to withdraw his plea, he could not have formed that intention until well after the Court had accepted the plea, regardless of any advice he received about the ability to withdraw a plea.

Upon consideration of the record and the testimony, the Court is convinced that the August 15, 2019 disclosure of the PSR prompted Mr. Farrelly's desire to withdraw his guilty plea. Preliminarily, the Court notes that in the Motion, Mr. Farrelly asserts that he "was aware that by [pleading guilty] he would be looking at a minimum mandatory jail sentence of ten (10) years which hopefully would result in an earlier release date based on good behavior" and argues that he was never advised that he may be facing an advisory guideline calculation of "30 years to life (as is the case with the PSI received by the Defendant)." See Motion ¶ 6, 13. Thus, in his own Motion, Mr. Farrelly suggests that the advisory guidelines which were significantly in excess of what he expected prompted his change of heart and should warrant relief. Mr. Farrelly's testimony at the January 8 Hearing also suggests that he fully expected to receive a significantly lower sentence than the advisory guideline range calculated in the PSR. Throughout the January 8 Hearing, Mr. Farrelly made repeated references to an anticipated sentence of "ten years" or his willingness to accept a sentence of "ten years." Indeed, when questioned about his statement at the June 19 Hearing that he was satisfied with Mr. Grant's representation, Mr. Farrelly responded: "[a]t the time, you know, I thought: You know what, maybe I can take the charge. Maybe I could do the ten years. Maybe if it was a little more, I could do that. To sacrifice myself for my family, I was willing to take that charge." January 8 Hearing Tr. at 26:6–9. Later, Mr. Farrelly stated "I thought if I had to take ten years, even more, I'd -- I would do so." Id. at 34:13–14. Mr. Farrelly again referenced "ten years" when questioned

by the Court as to his decision not to tell Judge Barksdale about his alleged dissatisfaction with Mr. Grant during the June 19 Hearing.  Specifically, Mr. Farrelly told the Court:

> I understand that it doesn't make no sense, and I apologize about that. I -- at the time, I was only -- I only had it in my head that I was going to take and be charged to protect my family.  And those -- you know, at the time, I wasn't really clearly thinking when I should have been clearing -- thinking clearly.  I was only worried about my family, and taking -- you know, if I had to take ten years, I have to take ten years.

Id. at 44:20–45:3.  As noted, both Mr. Grant and Mr. Farrelly testified that the PSR's guideline calculation played some role in Mr. Farrelly's decision to seek to withdraw his plea, Mr. Farrelly did not mention anything about wanting to withdraw his plea in the July 15 and August 1 messages seeking access to the law library, and Mr. Farrelly first expressed that desire on August 16, the day after the disclosure of the PSR.  On this record, the Court concludes that Mr. Farrelly anticipated a sentence at or near the applicable ten year mandatory minimum sentence, and that the release of the PSR calculating a proposed guideline sentence of imprisonment from "360 months to life" caused his belated desire to withdraw his plea.

The Court also rejects Mr. Farrelly's contention that but for Mr. Grant's misadvice he would have sought to withdraw his guilty plea earlier.  First, the Court notes that in his original Motion, Mr. Farrelly did not claim to have been misadvised by Mr. Grant.  Rather, he asserted that Mr. Grant had failed to affirmatively advise him of the right to withdraw his plea before its acceptance pursuant to Rule 11(d)(1).  It was only after Mr. Grant, in candor, testified about the private discussion he and Mr. Farrelly had during the change of plea hearing about the ability to withdraw a plea, that Mr. Farrelly seized on the contention that Mr. Grant misadvised him by responding in the negative and that this misadvice caused his delay in seeking to withdraw the guilty plea.  Thus, it does not appear that Mr. Farrelly

-28-

even remembered Mr. Grant's alleged misadvice, much less that the advice caused Mr. Farrelly to delay in seeking to withdraw his plea.  Just as the Court previously concluded that Mr. Farrelly's claims that his plea was not knowingly and voluntarily entered simply were not credible, the Court finds any suggestion that he actually wanted to, and would have, withdrawn his guilty plea before August 15, much less before the Court's acceptance of it on July 8, to be equally not credible.  Because the Court is convinced that it was the August 15 disclosure of the PSR that prompted Mr. Farrelly's desire to withdraw his plea, the alleged misadvice by Mr. Grant could not have played a role in the timing of his decision.

Having resolved the factual predicate underlying Mr. Farrelly's request to withdraw his plea, the Court turns to the question of whether he has shown a fair and just reason warranting an exercise of the Court's discretion.  In doing so, the Court is guided by the factors identified by the Eleventh Circuit in Buckles.  843 F.2d at 472.

### a.  First Buckles Factor: Whether Mr. Farrelly Received Close Assistance of Counsel

Upon careful consideration of the circumstances of this case, the Court finds that Mr. Farrelly received close assistance of counsel.  Although review of Eleventh Circuit precedent does not reveal a definitive approach for determining whether a defendant received close assistance of counsel, the Eleventh Circuit has stated that "[i]n assessing whether close assistance of counsel was available during plea proceedings, we examine whether close assistance of counsel was available and utilized, as well as whether counsel performed adequately."  United States v. Wiggins, 666 F. App'x 850, 855 (11th Cir. 2016) (per curiam) (quoting McCarty, 99 F.3d at 385).  Generally, courts consider factors such as the amount of time counsel spent with the defendant, the number of meetings counsel

had with the defendant, the closeness of the attorney-client relationship, the relative experience of counsel, and whether the defendant testified as to his satisfaction with counsel's representation.  See United States v. Oliver, 316 F. App'x 877, 879 (11th Cir. 2008) (per curiam) (affirming district court's determination that defendant received close assistance of counsel because "trial counsel. . .stated she had met with [defendant] 'numerous times' and 'developed a close attorney-client relationship.' Further, [defendant] testified. . .that he was 'very satisfied' with counsel."); United States v. Chicago, 711 F. App'x 512, 515 (11th Cir. 2017) (per curiam) (affirming district court's close-assistance determination because defendant testified "that he had discussed the charges, possible defenses, the plea agreement, and the factual resume with his attorney, that he understood the plea agreement, and that he was fully satisfied with his representation, despite a previous argument. . .[i]n addition, the district court [observed] that [counsel] had multiple off-the-record conversations with [defendant] through an interpreter during the plea hearing, apparently to ensure that Defendant adequately understood the court's questions."); United States v. Reese, 280 F. App'x 854, 858 (11th Cir. 2008) (per curiam) (affirming close-assistance determination because "[counsel] testified she had been an assistant federal public defender for almost twenty-three years. . .[counsel] negotiated a favorable plea agreement for [defendant]. . .met with [Defendant] a number of times and advised him of his options and the pros and cons of pleading guilty. . .[t]he fact that [counsel's] extensive defense experience strongly suggested that [defendant's] best course of action was to plead guilty in an effort to reduce his sentence certainly does not mean that [counsel] failed to render close assistance"); United States v. Harrison, 505 F. App'x 876, 880 (11th Cir. 2013) (per curiam) (affirming close-assistance determination

because "the record supports the court's conclusion that [defendant's] dissatisfaction with his defense counsel's performance was invented post-plea as an argument to support his request to withdraw his pleas," where defendant testified to his satisfaction with counsel during the plea colloquy); United States v. McFarland, 719 F. App'x 908, 912 (11th Cir. 2017) (per curiam) (affirming close-assistance determination because at defendant's plea colloquy he "stated that he discussed the terms of the plea agreement with [counsel], he was satisfied with [counsel's] representation, and he understood the terms of the agreement") (citing McCarty, 99 F.3d at 385).

Here, Mr. Farrelly was represented by an experienced Federal Public Defender who has been practicing criminal defense for over 25 years. Mr. Farrelly testified unequivocally at the June 19 Hearing that he was satisfied with Mr. Grant's representation, that he discussed the entirety of his case with Mr. Grant, that Mr. Grant answered all of his questions, that he had enough time to confer with Mr. Grant, and that he had no complaints with Mr. Grant's representation. Additionally, Mr. Grant testified at the January 27 Hearing that Mr. Farrelly could contact him at any time from his detention facility. See January 27 Hearing Tr. at 21:21–22:6; 22:14–18. These facts establish that Mr. Farrelly received close assistance of counsel. Nevertheless, Mr. Farrelly maintains that Mr. Grant's advice at the June 19 Hearing constitutes ineffective assistance of counsel such that it negates a conclusion that he had the benefit of close assistance of counsel.[11]

---

[11] The Court notes that Mr. Farrelly's arguments whether he received ineffective assistance of counsel are rather cursory. Indeed, Mr. Farrelly only discusses his ineffective assistance of counsel claim in the latter two of his three briefs. See Supplemental Memo ¶ 6; Second Supplemental Memo at 5. However, as Mr. Farrelly has at least raised the issue, the Court will construe his arguments regarding ineffective assistance as pertaining to whether he received close assistance of counsel.

"To withdraw a guilty plea based on the ineffective assistance of counsel, a defendant must allege and then show not only that his attorney's conduct 'fell below an objective standard of reasonableness,' but also that he was prejudiced by that conduct — in other words, that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" United States v. Rivers, 656 F. App'x 444, 449 (11th Cir. 2016) (per curiam) (quoting Hill v. Lockhart, 474 U.S. 52, 57–59 (1985) (quotation marks omitted)); see also United States v. Pease, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (setting out the legal standard for claims of ineffective assistance of counsel in the context of Rule 11(d)(2)(B) motions. Notably, "[a] conclusory allegation of prejudice is not sufficient." Id. (citing Hill, 474 U.S. at 59–60). "Instead, the defendant must allege specific facts suggesting that he would not have decided to plead guilty but for his attorney's alleged errors or omissions." Id.

In his Supplemental Memo, Mr. Farrelly asserts that Mr. Grant's advice at the June 19 Hearing that he would not later be able to withdraw his plea fell below an objective standard of reasonableness. See Supplemental Memo ¶ 6. In this regard, Mr. Farrelly argues that because he was not advised of his "absolute right" to withdraw his plea under Rule 11(d)(1), he did not receive effective assistance of counsel. See Second Supplemental Memo ¶ 5. Additionally, he maintains that "[p]rejudice should be presumed in a change of plea situation where the defendant clearly represents that he would have acted upon the omitted information or advice, and would thereby have sought to withdraw his plea." Id. ¶ 6.

Although Mr. Grant testified that he answered in the negative when Mr. Farrelly asked whether he could withdraw his plea later, the Court finds that given the broader

context of Mr. Grant's statement, his answer does not fall below the objective standard of reasonableness.  Rivers, 656 F. App'x at 449.  Mr. Grant testified that, in essence, he explained to Mr. Farrelly "the answer was no, because if he didn't want to plead guilty, we didn't have to plead guilty right now."  See January 27 Hearing Tr. at 19:16–17.  In other words, if Mr. Farrelly "didn't want to plead guilty, he shouldn't be pleading at all."  Id. at 26:13–24.  Mr. Grant further explained: "this was the second [change-of-plea hearing], my whole thing was if you're going to plead guilty, you're pleading guilty because you are guilty. And if you're not guilty, then why are you pleading guilty?"  Id. at 20:7–10.  In this sense, the Court finds that Mr. Grant merely sought to reinforce to Mr. Farrelly Judge Barksdale's cautionary advice at the June 19 Hearing that despite "whatever is going on in the background[, y]ou're pleading guilty because you are guilty, and if that's not the case, we can't go forward with [the plea]."  See June 19 Hearing Tr. at 11:1–4.  Indeed, as the Court stated at the January 27 Hearing, "I certainly understand the reasoning - - Mr. Grant's reasoning, which is if you're not sure about pleading guilty, we shouldn't proceed with the plea, rather than worry about withdrawing it."  January 27 Hearing Tr. at 29:12–15.  Given the circumstances of the case, Mr. Grant's response to Mr. Farrelly was not unreasonable.

Nevertheless, even if the Court were to assume that Mr. Grant's answer to Mr. Farrelly constitutes misadvice that falls below an objective standard of reasonableness for purposes of the ineffective assistance of counsel analysis, Mr. Farrelly has nonetheless wholly failed to establish that he suffered prejudice from that advice.  Rivers, 656 F. App'x at 449.  Mr. Farrelly has not shown that Mr. Grant's advice caused either his decision to plead guilty or his failure to withdraw his plea before the Court accepted it.  The Court finds it entirely implausible that a defendant, having been advised that his guilty plea was in

effect final and irrevocable, would thereby be <u>more</u> inclined to plead guilty.  Rather, such advice can only reasonably be understood to have the effect of <u>dissuading</u> a hesitant defendant from pleading guilty.  Moreover, to the extent Mr. Farrelly argues that but for Mr. Grant's advice he would have withdrawn his plea prior to July 8, 2019, the Court has rejected such assertions as incredible.  <u>See</u> <u>supra</u> 26–28.  Therefore, Mr. Farrelly has not established that there is a reasonable probability that, had Mr. Grant advised him of his right to withdraw his plea, he would have sought to do so (and to go to trial) before the Court accepted the plea on July 8.  <u>Rivers</u>, 656 F. App'x at 449.  Thus, Mr. Farrelly cannot show he received ineffective assistance of counsel from Mr. Grant.

The record before the Court reflects that Mr. Farrelly received close assistance of counsel throughout his prosecution and his change-of-plea proceedings, and his unequivocal testimony confirms that finding.  The record further shows that Mr. Farrelly changed his mind about his prior uncoerced, knowing and voluntary decision to plead guilty and testified falsely at the January 8 Hearing in an attempt to reverse course.  <u>Reese</u>, 280 F. App'x at 857 (affirming district court's denial of request to withdraw plea where court found the defendant "simply changed his mind about his prior uncoerced decision to plead guilty and concocted a false story to attempt to [undo] what he later determined to be a poor decision."); <u>see also</u> <u>Harrison</u>, 505 F. App'x at 880 ("The record however supports the court's conclusion that [defendant's] dissatisfaction with his defense counsel's performance was invented post-plea as an argument to support his request to withdraw his pleas.").  The Court finds Mr. Farrelly has not demonstrated that he lacked close assistance of counsel.  Accordingly, his arguments that he did not receive close assistance of counsel

do not constitute a fair and just reason for requesting withdrawal of his plea, and this factor weighs against granting his request.  <u>Brehm</u>, 442 F.3d at 1298.

### b. Second <u>Buckles</u> Factor: Whether Mr. Farrelly's Guilty Plea was Knowing and Voluntary

At the January 8 Hearing, the Court determined that Mr. Farrelly's unequivocal testimony at his change-of-plea hearings affirmatively contradicted his claim that his guilty plea was not knowing and voluntary.  <u>See</u> January 8 Hearing Tr. at 66:8–71:19; <u>see also</u> Clerk's Minutes (Doc. 70).  Moreover, the Court found that the Rule 11 colloquy at Mr. Farrelly's June 19 Hearing was quite thorough and readily satisfied all of the core concerns of Rule 11.  <u>See generally</u> <u>id.</u>; <u>Freixas</u>, 332 F.3d at 1318.  Therefore, the Court has concluded that Mr. Farrelly knowingly and voluntarily entered his plea of guilty.  Mr. Farrelly's belated dissatisfaction with his advisory guidelines range does not present a fair and just reason to withdraw a plea knowingly and voluntarily entered with the close assistance of counsel.  Indeed, during both the change of plea colloquy on June 19 and the attempted plea on June 13, Judge Barksdale specifically advised Mr. Farrelly of the maximum penalty and cautioned Mr. Farrelly that if his sentence ended up being higher than he expected, he would not be able to withdraw his plea.[12]  Because Mr. Farrelly

---

[12] At the January 27 Hearing, Mr. Grant acknowledged that he had not anticipated a five level enhancement for Mr. Farrelly's offense having involved multiple victims.  <u>See</u> January 27 Hearing Tr. at 17:21–18:10.  While this miscalculation did result in an advisory guideline range higher than either he or Mr. Farrelly anticipated, it provides no basis for the withdrawal of Mr. Farrelly's guilty plea.  Preliminarily, the Court notes that even without that five level enhancement, the PSR would have calculated Mr. Farrelly's advisory guideline range of imprisonment to be 292 – 365 months – still far, far in excess of the ten year sentence Mr. Farrelly seems to have been convinced that he would receive.  More importantly, during the change of plea colloquy, Judge Barksdale advised Mr. Farrelly that he faced a maximum sentence of up to life in prison, and he acknowledged his understanding of that fact.  <u>See</u> June 19 Hearing Tr. at 18:3–20:10.  She also cautioned him that the sentence actually imposed by the judge may "be different from any estimated sentence that Mr. Grant or anyone else has given to you. . . .  If that were to happen, you would still be bound by your guilty plea and would not have a right to withdraw it."  <u>Id.</u> at 22:3–8.  Mr. Farrelly acknowledged his understanding of this as well.  Whatever sentence the Court ultimately imposes, Mr. Farrelly pled guilty knowing that it could be anything up to life in prison and that any estimate given by Mr. Grant would not relieve him of the consequence of his decision to enter the guilty plea.  <u>Id.</u> at 22:9–21.

proceeded to plead guilty knowingly and voluntarily with full knowledge of the potential penalty he faced, this <u>Buckles</u> factor weighs against granting his Motion.  <u>See Buckles</u>, 843 F.2d at 472; <u>Brehm</u>, 442 F.3d at 1298.

Having determined that the first two <u>Buckles</u> factors weigh against Mr. Farrelly, the Court need not "give particular attention" to either of the latter two factors.  <u>See Gonzalez-Mercado</u>, 808 F.2d at 801; <u>see also United States v. Faircloth</u>, 712 F. App'x 887, 892 (11th Cir. 2017) ("When a defendant received close assistance of counsel and entered a knowing and voluntary guilty plea, the court need not consider the remaining factors.") (citing <u>Gonzalez-Mercado</u>, 808 F.2d at 801).  Nevertheless, the Court addresses them briefly here.

### c.  Third <u>Buckles</u> Factor: Whether Permitting Mr. Farrelly to Withdraw his Plea Would Conserve Judicial Resources

Permitting Mr. Farrelly to withdraw his guilty plea at this stage would certainly require the expenditure of additional Court resources, as the case would proceed to trial.[13] However, the expenditure of resources attendant to trial does not appear to be unusual or extraordinary in this case.  Ultimately, however, the determination of whether to permit Mr. Farrelly to withdraw his guilty plea would conserve judicial resources remains speculative.  For instance, Mr. Farrelly may seek appellate review of this Court's denial of his Motion, and if he receives an unfavorable decision from the Eleventh Circuit, he may later initiate post-conviction proceedings raising similar issues, all of which would require the

---

[13] The Court notes that significant Court resources have already been expended in Mr. Farrelly's case. Indeed, as a result of Mr. Farrelly's desire to withdraw his guilty plea and his claims at the January 8 Hearing, the Court has held two additional hearings on Mr. Farrelly's Motion.  <u>See Reese</u>, 280 F. App'x at 858 (affirming the district court's finding that "'enough judicial resources [had] already been expended,' noting that [the defendant] received a complete Rule 11 proceeding and a full evidentiary hearing on the motion to withdraw," and further noting the district court's observation that the defendant's false accusations about his attorney resulted in the "unjustified need for appointment of a second lawyer, which drained limited court funds").

expenditure of Court resources.  See United States v. Covington, No. 8:06–CR–162–T–27MSS, 2007 WL 1174131, at *2 (M.D. Fla. April 16, 2007) (considering the potential judicial expenses incurred upon an appeal and future collateral attacks if the defendant's Rule 11(d)(2)(B) motion were to be denied).  Therefore, the Court assigns little weight to this factor.

### d. Fourth Buckles Factor: Whether Permitting Mr. Farrelly to Withdraw his Plea Would Prejudice the Government

In determining whether permitting a defendant to withdraw his guilty plea would prejudice the government, courts may consider "the time, money, and effort the government would have to devote to reassembling witnesses and evidence that were allowed to scatter" after entry of a guilty plea.  Buckles, 843 F.2d at 474; see also Faircloth, 712 F. App'x at 892 (citing Buckles, 843 F.2d at 474).  Here, the United States contends that it would suffer prejudice if the Court were to grant Mr. Farrelly's Motion because "the plea took place almost eighteen months ago," which caused the government "to limit its investigation in establishing the defendant's guilt."  See Second Supplemental Response at 2.  In contrast, Mr. Farrelly asserts that there are no extraordinary circumstances in this case causing significant prejudice to the government.  See Second Supplemental Memo ¶ 4.

Although the Court recognizes the significant passage of time since June of 2019, when Mr. Farrelly pled guilty, courts typically calculate the delay from the time a defendant enters a guilty plea to his filing of a motion to withdraw the plea, rather than considering the overall period of delay between entry of a plea and a court's ruling on the motion to withdraw.  See, e.g., Brehm, 442 F.3d at 1298; Faircloth, 712 F. App'x at 893 (considering the delay between the defendant's plea and the filing of his motion to withdraw it).

Moreover, a large portion of the overall delay in this case was caused by the unprecedented disruption to daily life occasioned by the COVID-19 pandemic beginning in March of 2020. Thus, the full eighteen-month period calculated by the United States should not be attributed to Mr. Farrelly.  Instead, the Court finds that the period of delay attributable to Mr. Farrelly is more accurately calculated from entry of the plea on June 19, 2019, and his submission of the Motion on November 14, 2019.  Even considering this shorter period, the fact remains that a substantial amount of time has passed between Mr. Farrelly's entry of his guilty plea and his filing of the Motion seeking to withdraw it, and Mr. Farrelly has failed to present a compelling explanation for his decision.  See Brehm, 442 F.3d at 1298 (noting that the longer the delay "the more substantial the reasons must be").  Moreover, the United States' position that witnesses' memories may have faded and evidence may have become unobtainable as a result of the delay has at least some merit.  See Buckles, 843 F.2d at 474 (finding that the district court was "justified in considering the time, money, and effort the government would have to devote to reassembling witnesses and evidence that were allowed to scatter after the acceptance of the guilty plea); Faircloth, 712 F. App'x at 893.

Even setting aside the possible prejudice to the United States, the potential for prejudice to the victim weighs against granting Mr. Farrelly's Motion.  Although the Eleventh Circuit has not yet commented on the weight courts should attribute to prejudice to the victim when conducting a Buckles analysis, courts have included prejudice to the alleged victim as a consideration subsumed in the fourth Buckles factor or its equivalent.  See United States v. Prive, No. 6:14–cr–33–Orl–28KRS, 2015 WL 500899, at *6 (M.D. Fla. Feb. 5, 2015) (noting the government's argument in a case of alleged enticement of a minor that

it "would have to explain to members of the minor victim's family that they may have to testify at trial even though the Defendant had previously pleaded guilty," and concluding that "[c]onsidering the sensitive nature of this case, this is sufficient to show some prejudice to the Government") (citing United States v. Byrne, No. 09–14059–CR, 2010 WL 2243755, at *4 (S.D. Fla. June 4, 2010) (determining that the government would be prejudiced if defendant were allowed to withdraw his guilty plea in a case of alleged child pornography because "[m]ost importantly, the Government would have to explain to the minor child and her family that they may have to testify at a trial even though [the defendant] had previously pleaded guilty")); see also United States v. Santiago-Rivera, 805 F.3d 396 (1st Cir. 2015) (recognizing "the severe prejudice that the government would face were [the defendant] permitted to withdraw his guilty plea, and the burden that his victims would face were they forced to relive the trauma inflicted upon them so long after they believed [the] case had ended," where the defendant was accused of producing and possessing child pornography, some of which depicted the defendant having intercourse with one of the child victims); United States v. Yazzie, 407 F.3d 1139, 1143 (10th Cir. 2005) (affirming district court's conclusion that government would be significantly prejudiced by allowing defendant to withdraw his guilty plea "because it would be difficult for the victim to testify so long after the offense occurred"); United States v. Lineback, 330 F.3d 441, 443–444 (6th Cir. 2003) (affirming, in a child pornography case, the district court's denial of the defendant's motion to withdraw his plea in part based on the reasoning that prejudice to the victims in the form of "anxiety and emotional underpinnings of knowing that a matter they thought was resolved would now be reopened . . . while [not outweighing] a defendant's rights to a trial,

[ ] are factors that have to be taken into the mix") (discussing <u>United States v. Morrison</u>, 967 F.2d 264, 269 (8th Cir. 1992)).

Here, the Court determines that permitting Mr. Farrelly to withdraw his guilty plea would prejudice the victim, who was a minor at the time of the sexual offense and would very likely be required to testify were the Court to grant Mr. Farrelly's Motion.  Whether considered prejudice to the government or as another circumstance within the totality, the Court finds that requiring the victim to testify and relive such traumatic experiences at this point in time after believing the matter to have been resolved weighs against granting Mr. Farrelly's Motion.  Therefore, on balance, the final <u>Buckles</u> factor weighs against permitting Mr. Farrelly to withdraw his plea.[14]

## IV.   Conclusion

Considering the totality of the circumstances, the balancing of the <u>Buckles</u> factors, and the satisfaction of the core concerns of Rule 11, the Court determines that Mr. Farrelly's Motion is due to be denied.  In making this determination, the undersigned emphasizes the uniqueness of the circumstances in this case, and the role Mr. Farrelly's lack of credibility played in the broader context of the analysis.  Given that the two primary <u>Buckles</u> factors weigh against Mr. Farrelly, coupled with the cognizable prejudice to the victim in this case, and the satisfaction of Rule 11, the Court concludes that Mr. Farrelly has not shown a fair and just reason to warrant allowing him to withdraw his guilty plea.

---

[14] While the Court weighs this last factor against granting of the Motion, because the consideration of the first two <u>Buckles</u> factors weigh against Mr. Farrelly, the Court's conclusion would be the same even if the last factor were neutral.

Accordingly, it is hereby

**ORDERED**:

1.      Defendant Sean Patrick Farrelly's Motion to Withdraw Plea of Guilty (Doc.

62) is **DENIED**.

2.      The sentencing is set for **Monday, March 15, 2021, at 11:00 a.m.** in

Courtroom 10B.

**DONE AND ORDERED** in Jacksonville, Florida on February 9, 2021.

MARCIA MORALES HOWARD
United States District Judge

lc27

Copies to:

Counsel of Record
U.S. Probation

-41-